## FRANK AZZALIA, Respondent, v. BLANCHE ST. CLAIRE, Appellant.

BILL OF SALE—WHEN A MORTGAGE—MORTGAGE—DOES NOT PASS TITLE— WHAT MORTGAGEE CAN CONVEY—SEC. 3474, R. S. 1898—ASSIGN- MENTS OF ERROR—WHEN IMMATERIAL.

1. BILL OF SALE: WHEN A MORTGAGE. A bill of sale of a house, situated on mining ground, given to the party furnishing the lumber for the erection of the house, without a transfer of possession, amounts to nothing but a mortgage securing the debt, and does not pass title.[1]

2. MORTGAGE: DOES NOT PASS TITLE: WHAT MORTGAGEE CAN CONVEY: SEC. 3474, R. S. 1898. Under the provisions of section 3474, C. L. U. 1898, a mortgage does not vest title in the mortgagee, and the mortgagor may convey the title, subject to the lien of the mortgage, to a third party, but such third party can acquire no greater rights than those possessed by his immediate grantor.[2]

---

[1] Peck v. Ins. Co., 16 Utah, 121; Stevens v. Improvement Co., 20 Utah, 267; 58 Pac. 843.

[2] Thompson v. Cheesman, 15 Utah, 43; Fields v. Cobbey, 22 Utah, 415; 62 Pac. 1020.

3. ASSIGNMENTS OF ERROR: WHEN IMMATERIAL. Where it appears from
the admitted facts that the verdict of the jury was correct and that
the trial court would have been warranted in instructing the jury to
find for the plaintiff and assess his damages in such sum as the evi-
dence, in their opinion, justified, other assignments of error are im-
material.[3]

Decided April 17, 1901.

Appeal from the Fifth District Court, Juab County.—*Hon.
E. V. Higgins,* Judge.

Action in replevin for the recovery of certain property
and damages for wrongfully withholding the possession thereof.
From a judgment for plaintiff, defendant appealed.

AFFIRMED.

*Messrs. Truman & Williams* for appellant.

*M. M. Warner, Esq.,* and *N. A. Robertson, Esq.,* for
respondent.

STATEMENT OF FACTS.

This is an action to recover possession of the real prop-
erty described in the complaint, and to recover damages for
wrongfully withholding the possession thereof from the plain-
tiff by the defendant.

It is alleged in the complaint that the plaintiff, at all of
the times mentioned therein, had a legal estate in said real
property, and was entitled to the possession of the same; "that
ever since the fifteenth day of July, 1898, the defendant has
unlawfully kept and still unlawfully keeps the plaintiff out

[3]Pool v. Southern Pac. Co., 20 Utah, 210.

of possession of all of said premises, to the damage of the plaintiff in the sum of $1,400," for which judgment is prayed.

The answer denies each and every allegation of the complaint, and alleges, "that the said plaintiff got permission from the Lower Mammoth Mining Company, a corporation, to build a dwelling and other houses on said real estate; that said mining company was at the time of the building of said dwelling and other houses the owner of said real estate; that said plaintiff, on the second day of April, 1898, made and executed a bill of sale to the Tintic Lumber Company, a corporation, for said dwelling and other houses, situated on said real estate. That thereafter, and on the thirtieth day of April, 1898, the said plaintiff made a conditional purchase of said dwelling and other houses, from said Tintic Lumber Company and executed and delivered to said lumber company, the following conditional promissory note, in words and figures, as follows:

"$658.39.            Robinson, Utah, April 30, 1898.

"On or before sixty days after date, for value received, I promise to pay to the order of the Tintic Lumber Company, at Robinson, Utah, the sum of $658.39, with interest thereon, at the rate of one per cent per month from date until paid, both before and after judgment, and if this note be placed in the hands of an attorney for collection, I promise to pay the further sum of one hundred dollars as collection fees and charges. The consideration for the note is the agreed purchase of that certain frame two-story building erected upon the Lower Mammoth Mining Company lode mining claims, Tintic district in Mammoth, Utah, by the Tintic Lumber Company, and by it sold the undersigned, and it is expressly understood and agreed that the title to said building does not pass to the undersigned, but remains vested in the Tintic Lumber Company, and its assigns, until this note is fully paid. Build-

ing is situated at foot of Ajax Mining company dump, in Mammoth, Utah.

(Signed)                              "FRANK AZZALIA."

That said note became due on or about June 30, 1898, but that said plaintiff neglected, refused and failed to pay said note, or any part thereof. That thereafter, and on or about the fifteenth day of August, 1898, the said Tintic Lumber Company, sold and conveyed said dwelling and other houses, situated on said real estate, to this defendant for the sum, to-wit, of about $650, and assigned over to this defendant said bill of sale and said conditional note; that said Tintic Lumber Company, was on the said fifteenth day of August, 1898, the owner of said dwelling and other houses situated on said real estate, and that this defendant was at said time a tenant in possession of said premises and holding under said lumber company; that said dwelling and other houses were at all times personal property, and were built on said real estate by permission of said mining company, which facts were well known to the plaintiff and to said lumber company, as well as to this defendant.

The following undisputed facts appear from the evidence: Some time previous to March, 1898, the plaintiff, holding a lease and bond of the Golconda lode, at the time of the organization of the said Lower Mammoth Mining Company, gave up whatever right he had to said lode, and the company verbally agreed to give him one hundred feet of the surface ground for building purposes and to deed the same to him at any time that he wanted the deed; that after said verbal agreement the plaintiff surveyed and staked the premises described in the complaint and in March, 1898, graded a place for a house and finished building the same in May of that year; that the house so built was a dwelling house 24x50 feet and contained twelve

rooms; that on the twenty-ninth of September, 1898, the Lower Mammoth Mining Company conveyed the surface ground described in the complaint, reserving and excepting in said conveyance, to said company and its assigns, the mines and minerals under said surface, and the right to work and dispose of the mines and the minerals in said premises without entering upon the surface conveyed.

The Tintic Lumber Company furnished the plaintiff with lumber to build said house, and while it was being erected on the second day of April, 1898, the plaintiff executed and delivered to said company a bill of sale of the house. This bill of sale was given to secure the payment to the lumber company the purchase price of the lumber sold by said company to the plaintiff for the purpose of building the house in question; that afterwards, on the thirtieth day of April, 1898, $100 was paid and credited on the book account of the lumber so furnished by said company, and for the unpaid balance of said account the note and agreement of that date, set out in the answer was executed and delivered by plaintiff to said company. Said company never took possession of said house under said bill of sale, or at all. On the fifteenth day of August, said note not having been paid, said lumber company and the defendant entered into an agreement by which said company, in consideration of $150 paid, and $404 to be paid by the defendant in monthly installments of $75 each, with interest at ten per cent per annum, bound itself to turn over and assign to the defendant, when said sum of $404, with interest, was fully paid according to the terms of said agreement, said bill of sale and all evidence of indebtedness of the company for the purchase price of said dwelling house. It was also stipulated in said agreement that all of the right, title, and interest of said company should pass by such assignment to the defendant.

The defendant went into possession of said house as a tenant of the plaintiff before the work of building the same was completed and remained continuously in possession up to and during the trial.

Defendant's attorney at the trial admitted in open court that the tenancy of the defendant was a tenancy at will, and that the notice served by plaintiff on the defendant four days more than two months after her agreement with said lumber company, was sufficient to terminate the tenancy, if it had been served before the acquisition of defendant's title from another source.

Upon the payment of the installments and interest mentioned in the agreement with the lumber company, said company did not make any bill of sale of said house, or any written assignment of the bill of sale made to it by the plaintiff, or of said note and agreement, but simply delivered said instrument to the defendant together with the following receipt:

"Robinson, 3-4, 1899.

"$564.80.

"Received from Blanch St. Clair $564.80, $553.80 as principal and $11 on interest as payment in full on Frank Azzalia acct. and assignment of the same to the said Blanch St. Clair, by the Tintic Lumber Company.

"TINTIC LUMBER Co.,
"D. A. Depue, Manager."
"Robinson, Juab County, State of Utah."

On the thirtieth of July, 1898, a notice was served on both plaintiff and defendant by the lumber company, requiring them to vacate said house.   Soon after the service of this notice upon defendant she sent for the plaintiff and, in a conversation had with him regarding the notice, the plaintiff informed her

that he owned the property, and told her not to pay any attention to the notice, yet notwithstanding she was informed of plaintiff's ownership, she, a few days afterwards entered into the agreement with the lumber company under which she claims to have acquired a title to the house adverse to her landlord.

The jury returned a verdict for the plaintiff and assessed his damages at $520.

BASKIN, J., after stating the facts, delivered the opinion of the court:

Appellant's counsel claim that under the undisputed facts, as a matter of law, the appellant is entitled to judgment.

It is clear, if the undisputed facts show that the title to the house passed to the appellant, she was entitled to a verdict in her favor; if, however, they show that the title did not pass to her, then the verdict is correct, and the judgment should be affirmed.

The lumber company could not convey an absolute title to the house, and by the terms of its agreement with appellant, bound itself to convey only its right, title and interest in the house.

The bill of sale made by the respondent to the lumber company, notwithstanding its terms, as it was given to secure the purchase price of the lumber sold to the respondent, was only a mortgage, and passed no title to the house. The company only acquired a lien upon the house under it.

In the case of Peck v. Girard F. & M. Ins. Co., 16 Utah 121, this court held that an absolute deed of real estate, to secure a debt, is in effect a mortgage, and does not pass the title to the land, but simply creates a lien on the mortgaged property.

That case was approved by us in Stevens Imp. Co. v. S. O. L. B. & I. Co., 20 Utah 267; 58 Pac. Rep. 843.

In Barry v. Hamburg-Bremen Fire Ins. Co., 110 N. Y..
1, the court said: "The cases are very numerous in our re-
ports, and so familiar to the profession that we are surprised
at the necessity, at this date, of referring to them at all. We
will, however, cite a few of the cases showing that it has been
the settled law for many years that a deed, though absolute
in form, if given as security for a debt, is, to all intents and
purposes, both at law and in equity, a mortgage only," and
cited several cases which fully support that decision. This
rule is sustained by an overwhelming array of decisions in
other States.

In the case of Thompson v. Cheesman, 15 Utah 43-51-2,
this court, said: "The statutes of this State provide that 'a·
mortgage of real property shall not be deemed a conveyance,
whatever its terms, so as to enable the owner of the mortgage
to recover possession of the real property without a foreclosure
and sale.' 2 Comp. Laws Utah, 1888, sec. 3474. A mort-
gage of real property, under the statutes of this State, does not,
vest its title in the mortgagee. The mortgagor may convey the
title subject to the lien of the mortgagee to a third party."
Fields v. Cobbey (Utah), 62 Pac. 1020. See the numerous
cases in support of this doctrine, cited in the case of Sidney
Stevens v. S. O. L. B. & I. Co., supra.

At the time the note and agreement to convey, set out in
the answer, was given the bill of sale was not cancelled, but
still remained in force and was the only basis of the lumber
company's claim of ownership to the house, but as the bill of
sale was simply a mortgage and passed no title, or the right to
disturb plaintiff's possession of the house, except by foreclos-
ure, and the plaintiff had the right notwithstanding the bill of
sale, to convey the title of the house subject to the lien of the
mortgage to a third party, the only consideration of the note

and agreement was the balance due on the account for lumber secured by the bill of sale.

As the plaintiff, by his tenant at will, remained continuously in possession, that possession was notice to the tenant and strangers of his rights, and if the lumber company had made an assignment of the note, and an absolute conveyance of the house to a third party, instead of an assignment of the note and its interest in the bill of sale, still its grantee would have acquired only the note and a lien on the house to secure payment of the note. If the note had been paid by the plaintiff before its assignment, an absolute deed of the house by the lumber company to the plaintiff would not have passed any title, for the lumber company had none to convey. The only effect of such a transaction would have been the cancellation of the mortgage and a satisfaction of the lien.

The defendant in this case acquired no greater rights than the lumber company had under the bill of sale.

It follows from the admitted facts that the verdict of the jury was correct, and that the trial court would have been warranted in instructing the jury to find for the plaintiff and assess his damages at such sum as the evidence in their opinion justified. Such being the case the other assignments of error are immaterial. Pool v. Southern Pacific Co., 20 Utah 210-231.

It is ordered that the judgment of the court below be affirmed, and that the appellant pay the costs. *Miner, C. J.,* and *Bartch, J.,* concur.